UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
Kevin Hamilton,                                  :
                                                 :  Civ. No.
                  Plaintiff,                     :
                                                 :
-against-                                        :  Complaint and Jury Demand
                                                 :
City of New York, Daniel Nigro, FDNY, John and   :
Jane Does 1-10.                                  :
                  Defendants.                    :
                                                 :
                                                 :
------------------------------------------------------------------ X

Introduction

     This case is about the FDNY's discriminatory practices that ultimately seek to thin the ranks of African American firefighters.  Plaintiff is an African American firefighter whose faith requires him to maintain facial hair. Moreover, he cannot shave with a razor because they suffer from Pseudofolliculitis Barbae, a medical condition that affects approximately 45-85% of black men.  Pseudofolliculitis Barbae is a medical condition that causes significant pain, severe bumps, scarring, and deformities on the skin of afflicted individuals if they shave with a razor in order to be completely clean shaven.

     The Defendants installed a shaving policy that required each firefighter to be completely clean shaven. Defendants refuse to permit any accommodation to this unlawful policy.  As black men with Pseudofolliculitis Barbae and whose religious beliefs require him to maintain facial hair, Plaintiff cannot shave with a razor.  Moreover, this policy disproportionality affects black firefighters as a significant portion of black firefighters suffer from Pseudofolliculitis Barbae.  Plaintiff was afforded an accommodation to the shave policy, and was permitted to maintain very slight and barely noticeable facial hair.  Plaintiff was able to perform his job functions without any hardship to the Defendants.  Plaintiff passed a fit test that certified he could wear an oxygen

1

mask with the slight facial hair without any leakage of air.

Despite the fact that Plaintiff performed his job function with the accommodation without any hardship to Defendants, Defendants without any notice, legitimate reason, or rational basis, unilaterally canceled the accommodation. Defendants did not engage in any analysis, consideration, or review of the accommodation. Plaintiff was told that, all of a sudden, there were no exceptions to the shave policy and that the Plaintiff was in direct violation of the policy. Defendants then immediately reassigned Plaintiff from full duty to light duty as a result of their accommodation. In doing so, Defendants were punishing Plaintiff as he could not earn overtime pay on light duty. Defendants had the option of reassigning Plaintiff to other positions that maintained their eligibility for overtime pay, but instead decided to assign him to light duty and deprive him of an equal opportunity to earn overtime. Defendants' actions were aimed at discriminating against African American firefighters as their policy affected predominantly African American firefighters within the FDNY. The Defendants' conduct has a disparate impact upon African American firefighters as nearly every African American firefighter was targeted by this sudden and unlawful change in policy. The result of Defendants' actions is that a disproportionate number of black firefighters were adversely affected by the policy, reassigned, and forced to choose between their livelihood and serving the City they love.  Moreover, the Defendants' decision to place these firefighters on light duty enables the Defendants to eventually terminate the African American firefighters, further thinning an already sparse representation of minorities at the FDNY. Plaintiff and other African American firefighters now have to shave with a razor and endure painful bumps on their skin, irritated skin conditions, and scarring on their skin as a result of the FDNY's unlawful policies.

## PRELIMINARY STATEMENT

1. This is an action to remedy discrimination based on disability, race, color, and origin pursuant to the provisions of the Title VII, Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), and pursuant to Article, I, § 11 of the New York State Constitution for the violation of their due process and other constitutional rights to be free from racial, gender, and disability discrimination.

2. Furthermore, this is an action in which the Plaintiffs seek relief for Defendants' violation, of the American with Disabilities Act ("ADA") under color of state law, of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

3. Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State and City of New York, based upon diversity and supplemental jurisdiction of this Court, seeking relief and damages to redress the injuries Plaintiffs have suffered as a result of being discriminated against and retaliated against by their employer on the basis of disability, color, race, sex, and national origin.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f) (3), and 28 U.S.C. § 1331 and the Civil Rights Act of 1866 and 1871, which give this Court jurisdiction for each statute, the damages, exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

5. The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY.

## JURY DEMAND

6. Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

7. Plaintiff is a resident of New York City.

8. Plaintiff is employed as firefighter by the City of New York.

9. Plaintiff is an African American male who practices Judaism. Plaintiff's faith requires him to maintain facial hair.

10. Defendant, The City of New York, is a municipal corporation, incorporated in the State of New York.

11. Defendant Daniel Nigro is the commissioner for the FDNY and responsible for its policies and practices, particularly the ones complained of herein. Defendant Nigro created and implemented the unlawful policies described herein.

12. The City of New York is responsible for the Fire Department of the City of New York ("FDNY"), an agency it maintains, operates, and governs.

13. FDNY has its headquarters in Brooklyn, New York, and has its principal place of business at 9 Metro Tech Center, Brooklyn, New York 11201.

14. John and Jane Does are individuals who are working for an on behalf of the City of New York and who have participated in the unlawful conduct but whose identities are not yet known.

15. At all relevant times, the City acted through its agency, FDNY, to commit the acts alleged in this Complaint and were responsible for such acts.

16. Defendants John and Jane Does 1-10 work for the FDNY and perpetrated, enabled, and/or participated in the unlawful conduct complained of herein. The identities of these individuals are not yet known at this time but are known to Defendant City of New York.

17. All individual Defendants are sued in their official and individual capacities.

18. Defendants, assisted and/or conspired to and/or acted in concert with and/or did engage in the violations of Plaintiffs' Federal, State, and City rights. During all times mentioned herein, the Defendants acted under the color of law to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the City of New York.

## PROCEDURAL HISTORY

19. On or about May 23, 2018 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

20. A Right to Sue letter was issued to Plaintiff and Plaintiff files this action within the required time period to do so.

## FACTS

21. Plaintiff is an African American male and practices Judaism.

22. It is widely known and accepted that Judaism, like other Abrahamic faiths, requires is adherents to maintain facial hair.

23. Plaintiff suffers from the medical condition of Pseudofolliculitis Barbae.

24. This condition affects primarily African American men, and precludes them from shaving with a razor.

25. The FDNY maintains a policy whereby every active duty firefighter is required to be clean shaven.

26. Clean shaven is defined as having no facial hair what so ever, and the FDNY policy requires an active duty firefighter to use a razor to shave to meet that standard.

27. Plaintiff received an accommodation that permitted him to have close cropped facial hair that was barely noticeable as long as he passed what is called the "fit test."

28. The "fit test" refers to a test the FDNY administers to gauge the fit of oxygen masks on the face of a firefighter.

29. If the mask fits properly, then oxygen would not escape from the mask and the fit test would be passed.

30. Plaintiff took and passed a fit test on numerous occasions.

31. By the FDNY's own metric, the Plaintiff could all perform his job functions with the simple accommodation that he was afforded, i.e. being permitted to be close shaven but not clean shaven.

32. Plaintiff aptly performed his job functions with the accommodation provided regarding the clean shave policy.

33. Each day Plaintiff worked, he was subject to visual inspections by his supervisors, who observed that the barely noticeable facial hair worn by Plaintiff conformed to the accommodation granted to him.

34. All of a sudden, Plaintiff was summoned to FDNY headquarters in regards to his accommodation on or about May 2018.

35. Plaintiff observed that those summoned to FDNY headquarters were all black men.

36. The members summoned to headquarters were also treated with hostility and disrespect when they voiced concern about how they were treated.

37. Senior officials at the FDNY told Plaintiff that his accommodation was being unilaterally revoked, and that the Plaintiff was expected to be clean shaven with a razor's shave.

38. Defendants declared that there would be no exception to the clean shave policy for any reason as having any amount of facial hair would impact the fit of an oxygen mask.

39. This excuse was simply not true. Plaintiff passed a fit text, as did the others who were summoned to headquarters, and passed daily visual inspections at the firehouse.

40. They were all able to perform their job functions, and passed a fit test the very day they met with FDNY senior officers and were told they could not work in a firehouse due to having slight facial hair.

41. When Plaintiff objected to this treatment, he was placed on immediate light duty as punishment.

42. Placing a firefighter on light duty means that the firefighter is not eligible for overtime, which is a significant amount of income for most firefighters.

43. Placing the Plaintiff on light duty was retaliatory, as there were other designations that the FDNY would have assigned them that were outside of the firehouse but that did not require them to lose overtime pay.

44. Indeed, FDNY officials told the Plaintiff and others, in sum and substance, that they were being placed on light duty for a period of time so they can "think" about complying with the clean shave policy, and that if the Plaintiffs did not change their mind, they would be placed on a termination tract as being unable to do their jobs.

45. The position taken by the FDNY is a farce, and aimed at retaliating against Plaintiff and coercing him by taking away their ability to earn a living.

46. There was no analysis of the Plaintiff's accommodation before it was unilaterally revoked.

47. This newfound stance on the shave policy was not grounded in any legitimate workplace need, but rather a desire to discriminate against Plaintiff.

48. Indeed, should the affected firefighters be terminated, they would represent a significant portion of the African American membership at the FDNY.

49. Members were told that they would no longer be accommodated and were required to be clean shaven as defined by using a razor to shave.

50. Plaintiff was assigned to light duty and is in the position of facing termination if they do not abide by the unlawful and discriminatory practice of the FDNY.

51. Moreover, reassigning Plaintiff and others similarly situated to light duty positions meant taking them out of the firehouses they worked in and placing them in back office positions.

52. Plaintiff is being unlawfully forced to choose between having a job and earning a living, and shaving that results in significant pain, skin irritation, scarring, and lasting damage to his skin.

## COUNT I-DISCRIMINATION UNDER TITLE VII

53. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

54. Defendant City of New York, by and through the FDNY, discriminated against Plaintiff on the account of his religion, race, color, national origin, sex, and medical condition.

55. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff as set forth herein.

56. Defendants' employment practices have the affect of disproportionately targeting black firefighters so that they would be reassigned and eventually terminated.

57. Approximately 45%-85% of African American males experience pain, scarring. bumps, and deformity if they use a razor to shave.

## COUNT II-DISCRIMINATION UNDER TITLE VII

58. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

59. Title VII of the Civil Rights Act prohibits retaliation against employees.

60. Defendants engaged in unlawful employment practices prohibited by the Title VII by discriminating and retaliating against Plaintiff by demoting him due to FDNY's policy that unlawfully targets African Americans and those with disabilities and religious practices.

61. When the Plaintiff spoke out regarding this unlawful policy, he was reassigned and had his ability to make overtime pay taken from him.

62. The terms, conditions or privileges of his employment was changed due to his opposition to the unlawful employment practices of Defendants.

## COUNT III-DISCRIMINATION UNDER THE NEW YORK CITY HRL

63. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

64. The Administrative Code of City of New York Section 8-107 prohibits discrimination based upon color, religion, race, sex, national origin, and disability.

65. Moreover, these actions disproportionately affected black members of the FDNY.

66. Defendants engaged in unlawful discriminatory practices in violation of New York City Human Rights Law by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

## COUNT IV-DISCRIMINATION UNDER THE NEW YORK CITY HRL

67. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

68. The New York City Human Rights Law provides that it shall be unlawful discriminatory practice for an employer to discriminate against any person because such person has opposed any practices forbidden under the NYCHRL.

69. Defendants engaged in unlawful discriminatory practices in violation of New York City HRL by discriminating and retaliating against the Plaintiffs because of Plaintiffs' opposition to the unlawful employment practices of the Defendants.

## COUNT V-DISCRIMINATION REGARDING DISABILITY (ADA)

70. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

71. Plaintiff has a bona fide disability that affects a major life function, namely the ability to shave, skin condition, and skin deformity.

72. Plaintiff has been discriminated against by the Defendants due to his bona fide disability in violation of Federal Law.

73. Moreover, Defendants regarded Plaintiff as having a disability when they denied him an accommodation and/or when Defendants unilaterally reassigned Plaintiff from the firehouse to light duty due to his disability and/or having regarded Plaintiff as disabled.

74. Defendants violated Plaintiff's rights by discriminating against him due to his medical condition and refusing to provide an accommodation for same.

## COUNT VI-DISABILITY DISCRIMINATION UNDER THE NYC AND NYS HRL

75. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

76. Defendants violated the NYCHRL and NYSHRL prohibition of disability discrimination.

77. Defendants knew that Plaintiff had a disability and regarded Plaintiff as having a disability.

78. In light of the disability of Plaintiff and/or the Defendants regarding his as disabled, the Defendants demoted Plaintiff and reassigned him as a result thereof.

### COUNT VII-DISCRIMINATION UNDER NYS LAW

79. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

80. New York State Executive Law Section 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristic, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." NYS Executive Law § 296

81. Defendants engaged in unlawful discriminatory practices by discriminating against the Plaintiff as set forth herein based upon religion, race, color, national origin, sex and disability.

82. Plaintiff hereby make claims against Defendants under all of the applicable paragraphs of Executive Law Section 296 and NYS law.

### COUNT VIII-FOR DISCRIMINATORY UNDER NYS LAW

83. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

84. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice for any person to retaliate or discriminate against any person because he has opposed any practices forbidden under this article.

85. Defendants engaged in unlawful discriminatory practices by admonishing, retaliating, reassigning, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants

86. Plaintiff was subject to retaliation as more fully described herein.

### COUNT IX-VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983

87. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

88. 42 U.S.C. § 1983 provides that:

    Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

89. In committing the acts of discrimination and retaliation complained of herein, the Defendants acted jointly and under color of state law to deprive Plaintiff of his clearly established constitutionally protected rights under the First, Fifth, and Fourteenth Amendment of the United States Constitution.

90. Plaintiff in this action is citizens of the United States and all of the individual firefighter Defendants to this claim are persons under the purposes of Section 1983.

91. Defendants violated the above statute by violating Plaintiff's Constitutional rights through multiple acts of racial discrimination, as well as retaliation in violation of Plaintiff's rights.

### COUNT X-EQUAL PROTECTION-42 U.S.C. § 1983-Equal Protection

92. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

93. Defendants subjected Plaintiff to disparate treatment on account of his religion, race, sex, national origin, color, and disability.

94. Moreover, Defendants failed to intervene to prevent the clearly discriminatory and retaliatory actions taken against Plaintiff.

95. Defendants participated in the clearly discriminatory and retaliatory actions taken against Plaintiff.

96. Defendants actively condoned others to participate in the clearly discriminatory and retaliatory actions taken against Plaintiff.

97. Moreover, Defendants, as supervisory officers of the FDNY, failed to supervise other firefighters regarding unlawful discrimination and retaliation.

98. Defendants also knew or should have known that the other firefighters at the firehouse/headquarters were unlawfully discriminating against Plaintiff and failed to respond to or address such actions in any way.

99. Upon information and belief, Defendants were personally involved in either ordering or failing to take preventive and remedial measures to guard the unconstitutional discrimination and retaliation against Plaintiff.

100. Defendants knew, or in the exercise of due diligence, should have known, of the unconstitutional actions taken against Plaintiff.

101. The shaving policy is an unlawful policy promulgated by the Defendants.

102. The failure of Defendants to train, supervise and/or discipline any of the aforementioned individual supervisory firefighters with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate indifference or intentional misconduct, which directly and proximately caused the injuries and damages to Plaintiff set forth herein.

103. Non-minorities are not affected by the unlawful policy.

104. Indeed, the policy predominantly affects African-American males.

### COUNT XI-*Monell* Claim – 42 U.S.C. § 1983

105. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein

106. All of the acts and omissions described above, with regard to the unreasonable, unlawful, and retaliatory discrimination against Plaintiff, were carried out pursuant to policies and practices of the City which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation of and under the supervisory authority of Defendant City of New York and its agency, the FDNY.

107. Defendant City of New York and the FDNY, by their policy – through its agents, servants and employees, authorized, sanctioned and/or ratified the individual wrongful acts of Defendants and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

108. The actions of Defendants resulted from and were taken pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by members of the FDNY.

109. The relevant policies, customs and practices with regard to the racial, religious, and disability discrimination perpetrated against Plaintiff are pursuant to explicit polices.

110. In addition, there was no exception or accommodation in relation to these unlawful policies.

111. Plaintiff's injuries were a direct and proximate result of the Defendant City of New York's and its agency, the FDNY's, wrongful *de facto* policy and/or well-settled and widespread custom and practice and of the knowing and repeated failure of Defendant City of New

York and the FDNY to properly supervise, monitor, and train firefighters with regard to unconstitutional discrimination and retaliatory conduct.

112. Defendant City of New York knew or should have known that the acts alleged herein would deprive Plaintiff of his rights in violation of the First and Fourteenth Amendments to the United States Constitution.

### COUNT XII-VIOLATION OF RIGHTS SECURED BY 42 U.S.C. § 1981

113. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

114. At all times relevant herein, the conduct of all Defendants was subject to the provisions of 42 U.S.C. § 1981 which guarantees all persons "the same right…to make and enforce contracts…as is enjoyed by white citizens."

115. Thus, there is a clearly recognized federal right pursuant to Section 1981 to be free from race-based discrimination in connection with the enforcement of contractual rights.

116. The conduct and actions of Defendants, acting jointly and severally, and in concert with each other, in unlawfully discriminating against Plaintiff with race being a motivating factor, was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts. Defendants' discriminatory treatment of Plaintiff were done without lawful justification and was designed to cause, and did cause, specific and serious physical, mental, and emotional harm, pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under Section 1981.

117. As a direct and proximate result of all Defendants' wrongful acts, policies, practices, customs and/or usages complained of herein, Plaintiff has suffered injuries and damages including, but not limited to, extreme emotional distress, pain and suffering, severe anxiety, and embarrassment.

## **COUNT XIII-DISPARATE IMPACT DISCRIMINATION UNDER THE CIVIL RIGHTS ACT, TITLE VII, ADA, NYSHRL, NYCHRL, AND CONSTITUTIONAL LAW**

118. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

119. Defendants' policy has the effect of discriminating against African American men, people whose religious practices requires facial hair, and men who suffer from Pseudofolliculitis Barbae.

120. The Defendants' shaving policy, while appearing neutral on its face, in application is discriminatory as most African American men cannot comply with the policy, as well as others whose religious beliefs are violated by the policy.

121. Any individual suffering from the disability of Pseudofolliculitis Barbae similarly cannot comply with the policy, as well as any individual with religious obligations that require facial hair.

122. As such, Defendants' shaving policy and refusal to provide any accommodation disparately impacts men of color and individuals diagnosed with Pseudofolliculitis as well as this who must maintain some facial hair for religious reasons.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) A declaration that Defendants violated Plaintiff's federal and state civil rights;

(b) a declaration that the shaving policy and the policy of not having any exceptions to it is unlawful;

(c) Accommodation for Plaintiff and others similarly situated;

(d) an injunction prohibiting further discrimination and the violation of rights described herein;

(e) Compensatory, consequential, and special damages;

(f) Punitive damages against the individual Defendants;

(g) Damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(h) Reasonable attorneys' fees and costs pursuant; and

(i) Such other and further relief as appears just and proper.

Dated: New York, NY
August 17, 2018

> Respectfully submitted,
> s/ Aymen A. Aboushi, Esq.
> Aymen A. Aboushi, Esq.
> The Aboushi Law Firm
> 1441 Broadway, Fifth Floor
> New York, N.Y. 10018
> Tel: 212.391.8500
> Fax: 212.391.8508