UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

KEVIN HAMILTON,

                                    Plaintiff,

                -against-

CITY OF NEW YORK, DANIEL NIGRO, KAREN
HURWITZ, SHENECIA BEECHER, FDNY, JOHN
AND JANE DOES 1-10,

                                    Defendants.
_____

**MEMORANDUM & ORDER**
**18-CV-4657 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Kevin Hamilton practices Judaism and maintains facial
hair as an expression of his faith. He is also a firefighter with the
Fire Department of the City of New York ("FDNY"), an agency of
the City of the New York, which has a clean-shave grooming pol-
icy for all full-duty firefighters. The FDNY previously granted
Plaintiff a religious accommodation to maintain close-cropped fa-
cial hair while continuing to serve as a full-duty firefighter. But
the Department later ended its accommodation program and re-
voked Plaintiff's exemption from the clean-shave policy. As a
result, Plaintiff could not comply with the grooming policy, and
the FDNY transferred him from full-duty firefighting responsibil-
ities to light duty.

Plaintiff now brings this action against the City of New York, the
FDNY, Fire Commissioner Daniel Nigro, and other current
named and unnamed FDNY employees (collectively, "Defend-
ants"), alleging religious discrimination in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII");
the New York State Human Rights Law, N.Y. Exec. Law § 296
("NYSHRL"); and the New York City Human Rights Law, N.Y.C.
Admin. Code § 8-107 ("NYCHRL"). (Second Am. Compl. (Dkt.
31) ¶¶ 85-117, 137-186.) Plaintiff also asserts claims under the

First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. §§ 1981, 1983. (*Id.* ¶¶ 118-170).

The Second Circuit recently decided *Bey v. City of New York*, which involved Black firefighters who requested a medical accommodation from the FDNY's clean-shave grooming policy to maintain close-cropped facial hair. *See* 999 F.3d 157, 161-62 (2d Cir. 2021).[1] Those firefighters brought a failure-to-accommodate claim under the Americans with Disabilities Act ("ADA") and racial discrimination claims under Title VII. *See id.* at 161. The Second Circuit held that federal regulation promulgated by the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") unambiguously requires firefighters to be clean shaven where a respirator seals against their face (which New York City firefighters use). *See id.* at 166-67. Because OSHA's regulations are binding on the FDNY and prohibit the accommodation that the firefighters requested, the FDNY could not be held liable: Neither the ADA nor Title VII can be used to require employers to depart from binding federal regulations. *See id.* at 168-71.

Pending before the court are the parties' cross motions for summary judgment.[2] In these parallel motions, the parties ask the court for summary judgment on virtually the same claims. The Second Circuit's decision in *Bey* resolves much of the parties' dispute as to the meaning of OSHA's regulation and the FDNY's implementation of that regulation. With that decision in hand, the court first considers Plaintiff's religious discrimination and

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

[2] (Not. of Mot. for Summ. J. (Dkt. 45); Defs.' Mot. for Summ. J. ("Defs.' Mot.") (Dkt. 48); Pl.'s Opp. to Mot. for Summ. J. ("Pl.'s Opp.") (Dkt. 50); Defs.' Reply in Support of Mot. for Summ. J. ("Defs.' Reply") (Dkt. 52); Not. of Cross Mot. for Summ. J. (Dkt. 54); Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") (Dkt. 58); Defs.' Opp. to Mot. for Summ. J. ("Defs.' Opp.") (Dkt. 60); Pl.'s Reply in Support of Mot. for Summ. J. ("Pl.'s Reply") (Dkt. 61).)

equal protection claims, then turns to Plaintiff's First Amendment claim. For reasons that follow, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

## I.   BACKGROUND[3]

Plaintiff became a New York City firefighter after attending the FDNY's Firefighter Academy, which provides intensive training

---

[3] The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements accompanying their cross-motions for summary judgment and the admissible evidence they submitted. Local Rule 56.1(c) provides that a statement of material fact "will be deemed to be admitted for purposes of the motion unless specifically controverted" by a corresponding statement; Local Rule 56.1(d) provides that "[e]ach statement by the movant or opponent . . . including each statement controverting any statement . . . must be followed by citation to evidence to which would be admissible." And Federal Rule of Civil Procedure 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Based on these rules, in reviewing a parties' Local Rule 56.1 counterstatements, the court may strike specific but defective denials, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("Where there are no citations or where the cited materials do not support the factual assertions in the Statements, the court is free to disregard the assertion."), and ignore nonspecific denials, *see id.* at 73-74 ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

The court has reviewed the parties' statements and counterstatements of fact, as well as the evidence submitted in support of each statement. This background is the result of that review. Where a party has failed to specifically controvert a material statement of fact, and where that statement of fact is supported with admissible evidence in the record, the court has deemed that statement undisputed for purposes of deciding the motion. *See Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 12 (2d Cir. 2018) (summary order); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so

to prospective New York City firefighters. (Defs.' R. 56.1 Stmt. ("Defs.' 56.1") (Dkt. 47) ¶ 1; Defs.' Resp. to Pl.'s R. 56.1 Stmt. ("Defs.' 56.1 Resp.") (Dkt. 59) ¶¶ 2, 4.). Plaintiff served mostly as a "full duty" firefighter from January 2013 to May 2018. (Defs.' 56.1 ¶¶ 65-68.)

A full-duty firefighter performs "all the essential job[] functions of a Firefighter," namely, responding to fires and other emergency incidents. (*Id.* ¶ 23.) In responding to certain emergencies, New York City firefighters must wear a respirator. (*Id.* ¶¶ 7, 10-12.) The FDNY uses the N95 Respirator and the Scott AV-2000 Full Facepiece. (*Id.*) The Scott AV-2000 mask seals against the user's cheeks and chin. (*See* Scott AV-2000 Full Facepiece (Dkt. 46-4).)

Full-duty firefighters must comply with the FDNY's Safety Standards. (Defs.' 56.1 ¶ 24.) These Safety Standards include a grooming policy. (*Id.*; Firefighting Grooming – Health and Safety Standards ("Grooming Policy") (Dkt. 46-3).) This policy prohibits "beards, goatees, or any form of facial hair beneath the lower lip" and requires firefighters be "freshly shaven when reporting for duty." (Grooming Policy at 3; Defs.' 56.1 ¶ 24.)

The FDNY's grooming policy aligns with applicable federal regulation, specifically, OSHA's "Respiratory Protection Standard," 29 C.F.R. 1910.134. (Defs.' 56.1 ¶¶ 7-8.) The Respiratory Protection Standard provides that an "employer shall not permit respirators with tight-fitting face pieces to be worn by employees who have . . . [f]acial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function," 29 C.F.R. 1910.134(g)(1)(i)(A). (*Id.* ¶ 8; OSHA Standard Interpretation Letter (Dkt. 46-1).) This Standard is binding on the

---

set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

FDNY under New York State law, N.Y. Labor Law § 27-a(4)(a). (Defs.' 56.1 ¶¶ 8-10.)

The FDNY previously granted qualifying firefighters medical and religious accommodations, exempting their compliance with the grooming policy. (*Id.* ¶¶ 34-35, 51-52.)[4] These accommodations allowed firefighters to maintain close-cropped facial hair while remaining on full duty. (*Id.* ¶¶ 34-35, 51-52, 54-55.) Plaintiff, who practices Judaism and maintains facial hair as part of his faith, received this accommodation. (*Id.* ¶¶ 6, 31, 63, 72.)[5] In February 2017, he was granted a religious accommodation, which formally exempted his compliance with the FDNY's clean-shave grooming policy. (*Id.* ¶¶ 31, 71.) Plaintiff served as a full-duty firefighter with close-cropped facial hair following his accommodation. (*Id.* ¶¶ 31, 34.)

The FDNY later initiated a review of its grooming policy—in particular, the Department's practice of providing medical accommodations for close-cropped facial hair. (*Id.* ¶¶ 33-35, 39, 41.) After the FDNY completed this review in May 2018, Fire Commissioner Daniel Nigro decided to end the Department's accommodation program. (*Id.* ¶¶ 48-49.) He testified that safety concerns and OSHA's Respiratory Protection Standard compelled the FDNY to adhere strictly to its clean-shave policy. (*Id.*) As a result, the FDNY revoked all existing accommodations. (*Id.* ¶¶ 50-52.)

---

[4] The FDNY would grant an accommodation only if the requesting firefighter passed a "fit test," a standardized test designed by OSHA to ensure that the respirator properly seals against the mask-wearer's face. (Defs.' 56.1 ¶ 13; Pl.'s Rule 56.1 ¶ 25.) OSHA's regulation of fit tests also covers facial hair: "The test shall not be conducted if there is any hair growth between the skin and the facepiece sealing surface," 29 C.F.R. 1910.134(f). (Defs.' 56.1 ¶ 14.)

[5] Plaintiff testified that he also maintained close-cropped facial hair as a full-duty firefighter before receiving an official accommodation. (Pl.'s Rule 56.1 ¶ 21.)

Soon after Commissioner Nigro's decision, the FDNY informed Plaintiff and other affected firefighters that they could no longer maintain close-cropped facial hair and comply with the FDNY's Safety Standards. (*Id.* ¶¶ 52-55, 74-75.) Noncompliance meant they could no longer serve as full-duty firefighters. (*Id.* ¶¶ 54-56.) After a subsequent duty evaluation on May 22, 2018, the FDNY determined officially that Plaintiff no longer complied with the FDNY's Safety Standards because of his facial hair. (*Id.* ¶¶ 75-78.) He was reassigned to "light duty," effective immediately, and he remains on light duty today. (*Id.* ¶ 78; Pl.'s Rule 56.1 Stmt. ("Pl.'s 56.1") (Dkt. 57) ¶ 97.)

A firefighter on light duty is generally removed from the firehouse, (Pl.'s 56.1 ¶ 9; Dep. of Fire Commissioner Daniel Nigro ("Nigro Dep.") (Dkt. 56-10) at 52:22-53:4; 78:14-17), and assigned to "non-firefighter duties," (Defs.' 56.1 ¶¶ 56-58). These non-firefighter duties often involve administrative work. (Pl.'s 56.1 ¶ 9; Nigro Dep. at 78:14-79:2; Dep. of Don Nguyen ("Nguyen Dep.") (Dkt. 56-8) at 48:23-49:9.) Since his transfer to light duty, Plaintiff no longer performs "all the essential functions of a firefighter"—for example, he no longer responds to fires. (Defs.' 56.1 ¶¶ 23, 56, 58.) His time on light duty has included jobs with the FDNY's Counterterrorism Unit and the Rest and Care Unit. (*Id.* ¶¶ 79-80.) His responsibilities within those units have included acting as a victim during counterterrorism drills and aiding full-duty firefighters during active calls. (Pl.'s 56.1 ¶¶ 59-60; Nigro Dep. at 79:21-80:5.)

Plaintiff's claims of employment discrimination arise from the FDNY's reimplementation of its grooming policy, revocation of Plaintiff's religious accommodation to maintain close-cropped facial hair, and placement of Plaintiff on light duty. He now seeks declaratory, injunctive, and compensatory relief for these alleged violations. (Second Am. Compl. at 23.)

6

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the burden of demonstrating the absence of a question of material fact.

"The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "In determining whether summary judgment is appropriate, this court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Id.* Nevertheless, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). Put another way, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

In discrimination cases, the merits typically turn upon an employer's intent, necessitating the exercise of abundant caution in granting summary judgment for the employer. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that affidavits and

depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id.* "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Id.*

"These procedures continue to hold true when [the court] consider[s] cross-motions for summary judgment." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). In such a case, the court "assess[es] each motion on its own merits and . . . view[s] the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Id.* Accordingly, in reviewing Defendants' motion for summary judgment, the court views the record in the light most favorable to Plaintiff; in reviewing Plaintiff's motion for summary judgment, the court views the record in the light most favorable to Defendants.

## III.  DISCUSSION

### A.  Religious Discrimination and Equal Protection Claims

Plaintiff's religious discrimination and equal protection claims under the NYSHRL and pursuant to Sections 1981 and 1983 "are analyzed in tandem with [Plaintiff's] Title VII claims because the standards for liability under these laws are the same." *See Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 438 (E.D.N.Y. 2014); *see also Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 Fed. App'x. 10, 12 (2d Cir. 2013) (unpublished) (reviewing plaintiff's racial discrimination claims under Section 1981, Title VII, and the NYSHRL together); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (Sections 1981 and 1983 and Title VII); *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) (NYSHRL and Title VII); *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir.

2004) (equal protection and Title VII).[6] Accordingly, Plaintiff's claims are considered together, through the framework of Title VII.

Title VII prohibits discrimination in employment on the basis of religion. An employer may not "fail or refuse to hire or . . . discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

Employment discrimination claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case for discrimination. If the plaintiff makes this prima facie case, the burden then shifts to the defendant to rebut that case. *See McDonnell Douglas*, 411 U.S. at 802-03. If the defendant succeeds, the plaintiff must produce sufficient facts to support the discrimination claim by a preponderance of evidence. *See id.* This general framework is subject to unique demands specific to different types of discrimination claims. *See, e.g.*, *Bey*, 999 F.3d at 170 (disparate impact);

---

[6] The Second Amended Complaint is vague as to whether Plaintiff also pursues a claim under the New York State Constitution. (*See* Second Am. Compl. ¶ 1 (citing Article I, § 11 of the New York Constitution in the Preliminary Statement).) To the extent that Plaintiff makes a religious discrimination or equal protection claim under the New York Constitution, those claims would also be analyzed in tandem with the federal anti-discrimination allegations. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 n.3 (2d Cir. 2007) ("[T]he Equal Protection Clauses of the federal and New York Constitutions are coextensive.").

*Feingold*, 366 F.3d at 152 (disparate treatment); *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001) (failure to accommodate).

Plaintiff claims that the FDNY discriminated against him on the basis of religion under three theories: (1) Defendants failed to provide him with a reasonable accommodation (the failure-to-accommodate claim); (2) Defendants treated him differently because of his religion (the disparate treatment claim); and (3) Defendants' grooming policy had a discriminatory effect on firefighters who maintain facial hair in accordance with their faith (the disparate impact claim). *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) ("Title VII prohibits both intentional discrimination (known as disparate treatment) as well as . . . practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as disparate impact)."); *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) ("It is an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."). Plaintiff's claims for failure to accommodate, disparate treatment, and disparate impact are assessed under the specific requirements of each claim, within the burden-shifting framework.

### 1.   Failure to Accommodate

To establish a prima facie case of religious discrimination based on a failure to accommodate, plaintiffs must show that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight*, 275 F.3d at 167. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that it offered the plaintiff "a reasonable accommodation, unless doing so would cause the employer to

suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). "An accommodation . . . cause[s] undue hardship whenever it results in more than a *de minimis* cost to the employer." *Baker*, 445 F.3d at 548.

### a.   Prima Facie Case

It is uncontested that Plaintiff (1) held a sincere religious belief that conflicted with the FDNY's employment requirement, and (2) informed the FDNY about this belief. The parties dispute whether Plaintiff's involuntary transfer to light duty satisfies prong three, the discipline prong. "Although the Second Circuit has not directly addressed what the discipline prong of a failure to accommodate religious discrimination claim requires, it has suggested that this can be equated with an adverse employment action." *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 316 (E.D.N.Y. 2014) (collecting cases).

"An adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

The parties argue principally about pecuniary effects following placement on light duty like overtime wages, promotion opportunities, and other benefits. (Defs.' Mot. at 4-6; Pl.'s Opp. at 4-5, 7.) Defendants insist that "reassignments which do not impact an employee's salary or benefits do not constitute an adverse employment action." (Defs.' Mot. at 5.) But "[a] materially adverse change in the terms and conditions of employment is not limited solely to pay"; a materially adverse change "may encompass

other less tangible changes such as . . . significantly diminished material responsibilities." *Simms v. City of New York*, 160 F. Supp. 2d 398, 406 (E.D.N.Y. 2001); *see also Lore v. City of Syracuse*, 670 F.3d 127, 170 (2d Cir. 2012) ("The protections provided by Title VII are not limited to instances of discrimination in pecuniary emoluments."). In other words, an employer cannot avoid an adverse employment finding by exalting form over substance and asking a court to consider only the aggrieved employee's reassignment on paper without addressing other potentially adverse effects.

Here, Plaintiff suffered an adverse employment action because his placement on light duty has resulted in significantly diminished material responsibilities in the unique context of the FDNY. The FDNY trained Plaintiff to become a firefighter. (*See* Defs.' 56.1 Resp. ¶¶ 2, 4; Nigro Dep. at 23:8-24:11; Nguyen Dep. at 30:11-23.) Prior to his reassignment, he had served as a full-duty firefighter for almost five years. (Defs.' 56.1 ¶¶ 65-68.) On light duty, however, he can no longer perform "the essential job[] functions of a Firefighter." (Defs.' 56.1 ¶ 23; Nigro Dep. at 17:25-18:7.) "Plaintiff was removed from a position where he suppressed fires and conducted emergency rescue missions to a job that is essentially clerical." *Simms*, 160 F. Supp. 2d at 406 (finding that a firefighter's transfer to light duty status represented an adverse employment action).

Placement on light duty is not a purely lateral transfer in the context of the FDNY, nor is it a mere alteration in job responsibilities. Rather, it works a "radical change in the nature of [Plaintiff's] work" that "interfere[s] with a condition or privilege of employment." *See Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980). (*See also* Nigro Dep. 17:14-24.)

The disconnect between Plaintiff's unchanged title and base salary on the one hand, and his diminished responsibilities on the other, are particularly salient in this case. A firefighter on light

12

duty can perform only "non-firefighter duties." (Defs.' 56.1 ¶¶ 23, 56-58.) Plaintiff's non-firefighter duties have included acting as a victim for other firefighters in counterterrorism drills and providing aid to full-duty firefighters responding to fires. (Pl.'s 56.1 ¶¶ 59-60; *see also* Nigro Dep. at 79:21-80:5.) As a "light duty" firefighter, Plaintiff is a "firefighter" in title only. Indeed, the degree of Plaintiff's job diminishment is exacerbated when viewed in the unique context of the FDNY, where "[p]lacement on light duty" strikes "[a] blow to those who visualize themselves as public servants." *See Bey v. City of New York*, 437 F. Supp. 3d 222, 236-37 (E.D.N.Y. 2020) (finding that "[p]lacement on light duty . . . was inarguably adverse to" firefighters who requested a medical accommodation from complying with the FDNY's grooming policy), *aff'd in part*, *rev'd in part on other grounds*, 999 F.3d 157 (2d Cir. 2021).

Because placement on light duty constitutes an adverse employment action, Plaintiff has established his prima facie case. The burden shifts to Defendants to show that accommodating Plaintiff presents an undue hardship on the FDNY.

> b.   *Undue Hardship*

In light of the Second Circuit's decision in *Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021), Defendants easily satisfy their burden. In *Bey*, the plaintiff firefighters, subject to the same clean-shave grooming policy, brought a failure-to-accommodate claim under the ADA. *See* 999 F.3d at 164-65. The court found that OSHA's Respiratory Protection Standard "clearly requires firefighters to be clean shaven where a[] [respirator] seals against their face." *Id.* at 166. And this regulation is binding on the FDNY. *See* N.Y. Labor Law § 27-a(4)(a). Thus, the FDNY "cannot be held liable for failing to offer an accommodation that is expressly prohibited by binding federal law." *See id.* at 168 ("An accommodation is not reasonable within the meaning of the ADA

if it is specifically prohibited by a binding safety regulation promulgated by a federal agency.").

The Second Circuit's holding in the ADA accommodation context applies with equal (if not greater) force here. *See id.* at 170 ("Just as in the ADA context, we conclude that Title VII cannot be used to require employers to depart from binding federal regulations."); *Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745, 757 (E.D.N.Y. 1998) ("[I]n stark contrast to the ADA's reasonable accommodation requirement, which has been interpreted broadly, the obligation under Title VII is very slight."). As explained in *Bey*, "OSHA's regulations are binding on the FDNY and prohibit the accommodation that [Plaintiff] seek[s]. That ends the matter." *See* 999 F.3d at 169. Accordingly, Defendants are entitled to summary judgment on the failure-to-accommodate claim.[7]

### 2. Disparate Treatment

To establish a prima facie case of religious discrimination based on disparate treatment, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 492. If the plaintiff succeeds in making out a prima facie case, a presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason

---

[7] Plaintiff also argues that Defendants failed to consider any alternative respirators to accommodate Plaintiff. (Pl.'s Opp. at 13, 15-16.) To support that argument, Plaintiff cites specific alternatives that his expert identified. (*See id.*) But as Defendants note correctly, all of those alternative respirators violate other OSHA regulations. (*See* Defs.' Reply at 5.) Plaintiff fails to identify any alternative respirator that complies with binding OSHA regulations, which the FDNY could then use. Therefore, there is no basis to consider whether providing a hypothetical alternative respirator would cause an independent undue hardship on the FDNY.

for the adverse employment action. *See Holcomb*, 521 F.3d at 138. If the defendant proffers such a reason, the plaintiff "has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).

"A plaintiff may prove discrimination indirectly either . . . [by establishing the prima facie case] and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Back*, 365 F.3d at 124 ("[T]he plaintiff may, depending on how strong it is, rely upon the same evidence that comprised her prima facie case, without more."). "If a plaintiff relies on evidence that he was treated less favorably than employees outside of his protected group to raise an inference of discriminatory intent, he must establish that he was 'similarly situated in all material respects' to those employees." *Smith v. City of New York*, 385 F. Supp. 3d 323, 338 (S.D.N.Y. 2019) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).

Plaintiff satisfies the first three elements of his prima facie case. He is member of a protected class (he practices Judaism); he is qualified to be a firefighter (he served as a full-duty firefighter for almost five years); and he suffered an adverse employment action (the FDNY placed him on light duty). Assuming Plaintiff has satisfied the fourth element of his prima facie case, *see Payne v. New York City Police Dep't*, 863 F. Supp. 2d 169, 179-80 (E.D.N.Y. 2012) ("The plaintiff's burden to support his prima facie case of discrimination is *de minimis*."), Defendants have provided a legitimate, nondiscriminatory reason for transferring Plaintiff to light duty: OSHA's Respiratory Protection Standard

prohibits Plaintiff's desired accommodation, and the FDNY must follow that regulation, *see Bey*, 199 F.3d at 166-69. (*See* Defs.' ¶¶ 50-52.) Thus, the burden shifts back to Plaintiff to show pretext or discriminatory intent by a preponderance of evidence. Plaintiff has shown neither.

Plaintiff offers no evidence to suggest that the FDNY's rationale for revoking its accommodation program was pretextual. He instead attempts to show discriminatory intent with the deposition testimony of Valerie Loubriel, an FDNY disability rights coordinator who "testified that Plaintiff was placed on light duty **because** of his religious practices." (Pl.'s Opp. at 8 (emphasis in original).) But Plaintiff's argument, apart from mischaracterizing Ms. Loubriel's testimony, proves too much. (*See* Deposition of Valerie Loubriel ("Loubriel Dep.") (Dkt. 56-9) at 56 ("[Ms. Loubriel:] It's because he cannot shave due to religious reasons, and so he cannot be in the firehouse. [Question:] So because he requested the ability to maintain hair due to his religious observances, he was placed on light duty? [Ms. Loubriel:] Correct.").) Plaintiff was placed on light duty because he could not comply with the FDNY's grooming policy; he could not comply with the grooming policy because of his facial hair.

Plaintiff conflates religion and facial hair. The FDNY's grooming policy applies to all firefighters without exception, including firefighters with prior medical accommodations. (*See id.* at 56-57 (testifying that the grooming policy applies to firefighters who cannot shave due to a medical condition).) Facial hair—not religion—is the determinative characteristic.

Plaintiff also argues that "[i]t is clear that the Defendants targeted Plaintiff because of his religious belief," because Defendants acknowledged the fact that the reinforced clean-shave policy would impact firefighters with religious and medical accommodations. (*See* Pl.'s Opp. at 8-9.) Here, Plaintiff cites deposition testimony from Ms. Loubriel and Commissioner Nigro.

(*Id.*) Again, however, Plaintiff mischaracterizes their testimony and ignores the context in which they made it. Indeed, Plaintiff cites testimony from Commissioner Nigro that refers only to the firefighters who lost their medical accommodation. (*See id.* at 9 (citing Nigro Dep. at 38-40).) Plaintiff's selective interpretation of this testimony is insufficient to show an inference of intentional discrimination. *See Bey*, 437 F. Supp. 3d at 237

Finally, Plaintiff attempts to show discriminatory intent on the grounds that he was treated less favorably than nonreligious Caucasian firefighters. (Pl.'s Opp. at 9-10.) Plaintiff alleges these firefighters were and are permitted to serve as full-duty firefighters and maintain facial hair. (*Id.*; Pl.'s Mot. at 20-21.) But "Plaintiff offers no evidence—whatsoever—to suggest that the white employees to whom he refers were similarly situated to him in any material respect." *See Smith*, 385 F. Supp. 3d at 339 ("Having failed to offer even a scintilla of pertinent evidence, Plaintiff's references to white comparators are insufficient to raise an inference of discriminatory intent."); *see also Bey*, 437 F. Supp. 3d at 237 ("By focusing solely on white individuals employed by the FDNY as full-duty firefighters who were allegedly permitted to maintain facial hair, Plaintiffs mistakenly leap to the conclusion that they were subjected to disparate treatment."). Rather, Plaintiff's argument relies on a series of conclusory assertions, which assume these unidentified firefighters are similarly situated to him. (Pl.'s Opp. at 9-10; Pl.'s Mot. at 20-21.) "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *See Holcomb*, 521 F.3d at 137. Without more, Plaintiff cannot carry his burden to show discriminatory intent by a preponderance of evidence here.[8]

---

[8] Plaintiff also relies on several unauthenticated photographs of unknown firefighters, in an unknown place, on an unknown date to infer disparate

17

Plaintiff has failed to raise a genuine question of fact as to whether the legitimate reason offered by Defendants for placing him on light duty was a pretext for discrimination. He has also failed to show that he was treated different under the grooming policy than any similarly situated firefighters. Accordingly, Defendants are entitled to summary judgment on all disparate treatment claims.

### 3. Disparate Impact

To establish a prima facie case of religious discrimination based on disparate impact, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012). "If that prima facie showing is made, the defendant can defend the challenged policy as job related for the position in question and consistent with business necessity." *Bey*, 999 F.3d at 170. "Should the defendant succeed in demonstrating the business necessity of the challenged policy, the burden then shifts back to the plaintiff, who . . . must show that other methods exist to further the defendant's legitimate business interest without a similarly undesirable racial effect." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020).

*Bey* forecloses Plaintiff's disparate impact claim. Assuming Plaintiff satisfies his prima facie case, Defendants conclusively rebut that case because complying with OSHA's Respiratory Protection

---

treatment. (*See* Pl.'s Mot. at 20-21.) These photographs are inadmissible and need not be considered. *See Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). Even so, these photographs fail to show that he is similarly situated in all material respects to the pictured firefighters. Plaintiff does not provide who these firefighters are or when these photographs were taken. It is not enough for Plaintiff to say he is similarly situated to these unknown firefighters; it is his burden to provide evidence to establish they are similarly situated to him in all material respects.

Standard is a business necessity. *See Bey*, 999 F.3d at 170-71 ("[R]egardless of whether the FDNY has consistently enforced the respiratory-protection standard, complying with that legally binding federal regulation is, by definition, a business necessity and presents a complete defense to [Plaintiff's] disparate impact claim."). Moreover, "no less restrictive alternative exists" because "the FDNY is required to comply with the regulation as written." *See id.* at 170 n.9 (citing *Mandala*, 975 F.3d at 208). "Title VII cannot be used to require employers to depart from binding federal regulations." *See id.* at 170. Thus, Defendants are entitled to summary judgment on the disparate impact claim.

*    *    *

For the reasons stated above, Defendants are entitled to summary judgment on all religious discrimination and equal protection claims under Title VII and the NYSHRL and pursuant to Sections 1981 and 1983.[9]

### B.   Religious Discrimination Claims under the NYCHRL

Although Title VII's analytical framework is applicable to the NY-CHRL, *see Payne v. New York City Police Dep't*, 863 F. Supp. 2d 169, 179 n.5 (E.D.N.Y. 2012) (citing *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n. 9 (2d Cir. 2008)), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "The NYCHRL is reviewed more liberally than federal or state discrimination

---

[9] Plaintiff notes that Defendants failed to request relief as to the alleged equal protection claim; thus, Plaintiff argues, that claim must survive. (*See* Pl.'s Opp. at 17 n.1.) But Defendants incorporate the Equal Protection Clause in their broader analysis arguing for summary judgment of the religious discrimination claims. (*See* Defs.' Mot. at 2) (addressing "discrimination under Title VII, the Equal Protection Clause, NYSHRL and NYCHRL").) Because claims under Title VII and the Equal Protection Clause are analyzed together, Defendants' grouped approach suffices.

claims." *Parsons v. JPMorgan Chase Bank, N.A.*, No. 16-cv-0408
(NGG) (JO), 2018 WL 4861379, at *11 (E.D.N.Y. Sept. 30,
2018). But "the NYCHRL is not a general civility code." *Mihalik*,
715 F.3d at 110. The plaintiff still bears the burden of showing
discrimination. *See id.*

Plaintiff brings the same discrimination and equal protection
claims against Defendants under the NYCHRL as he has brought
under Title VII and the NYSHRL. Even applying the NYCHRL's
more liberal standard, Defendants are entitled to summary judg-
ment on the NYCHRL claims for substantially the same reasons
as above.

### 1.   Failure to Accommodate

The NYCHRL requires that an employer provide a reasonable ac-
commodation for the religious needs of an employee affected by
a condition of employment. N.Y.C. Admin. Code § 8-107(3)(a).
Reasonable accommodation means an accommodation to an em-
ployee's religious observance that does not cause the employer
"undue hardship." *Id.* § 8-107(3)(b). The NYCHRL defines undue
hardship as "an accommodation requiring significant expense or
difficulty." *Id.*; *cf. Baker*, 445 F.3d at 546 ("An accommoda-
tion . . . cause[s] undue hardship [under Title VII] whenever it
results in more than a *de minimis* cost to the employer.").

Plaintiff's failure-to-accommodate claim under the NYCHRL fails
for the same reasons as those explained above. Defendants satisfy
their burden because OSHA's regulation is binding on the FDNY
and prohibits the accommodation that Plaintiff seeks. *See Bey*,
999 F.3d at 168.

### 2.   Disparate Treatment and Disparate Impact

To prevail on a disparate treatment claim under the NYCHRL, a
plaintiff "need only show differential treatment—that she is
treated less well—because of a discriminatory intent." *Mihalik*,
715 F.3d at 110; *see also Zambrano-Lamhaouhi v. N.Y.C. Bd. of*

*Educ.*, 866 F. Supp. 2d 147, 160 (E.D.N.Y. 2011). But this lower standard does not cure Plaintiff's failure to identify a similarly situated comparator. *See Greenbaum v. New York City Transit Auth.*, No. 20-cv-771 (DLC), 2021 WL 2650509, at *7-9 (S.D.N.Y. June 25, 2021) ("Having failed to identify an adequate comparator, [plaintiff's] disparate treatment claim under the NY-CHRL fails."). He has not shown that religious discrimination played any role in Defendants' treatment of him. And he has not put forth evidence from which a reasonable jury could conclude that he was treated less well because of his religion. *See Lugo v. City of New York*, 518 Fed. App'x. 28, 30 (2d Cir. 2013) (unpublished) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal or state discrimination claims, it still requires a showing of some evidence from which discrimination can be inferred.").

Plaintiff's disparate impact claim under the NYCHRL also fails for the same reasons explained above: "[C]omplying with [a] legally binding federal regulation is, by definition, a business necessity and presents a complete defense to [Plaintiff's] disparate impact claim." *See Bey*, 999 F.3d at 171. In short, the NYCHRL, like Title VII, "cannot be used to require employers to depart from binding federal regulations." *See id.* at 170. Accordingly, Defendants are entitled to summary judgment on the NYCHRL claims.[10]

## C.   First Amendment Claims under Section 1983

Plaintiff alleges individual and municipal liability claims for a deprivation of his right to free exercise pursuant to 42 U.S.C. § 1983. (Second Am. Compl. ¶¶ 118-136.) "Section 1983 'is not itself a source of substantive rights, but a method for vindicating

---

[10] Plaintiff also alleges individual aider and abettor claims under the NYSHRL and NYCHRL. (*See* Second Am. Compl. ¶¶ 171-86.) Because Defendants are entitled to summary judgment on all claims under the NYSHRL and NYCHRL, however, Defendants are also entitled to summary judgment on these individualized allegations premised on those claims.

federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)). A plaintiff must satisfy two essential elements: "The conduct at issue must have been committed by a person acting under color of state law and must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). There is no dispute here that Defendants were acting under the color of state law. Because Defendants have not violated the Free Exercise Clause, however, Plaintiff's claims fail.

Under the Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, "[g]overnment enforcement of laws or policies that substantially burden the exercise of sincerely held religious beliefs is subject to strict scrutiny." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). "Where the government seeks to enforce a law that is neutral and of general applicability, however, then it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Id.* (citing *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990)). The Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Smith*, 494 U.S. at 879.

The FDNY's clean-shave grooming policy is facially neutral and applies to all full-duty firefighters without exception. Thus, the grooming policy is subject to rational basis review. *Cf. Litzman v. New York City Police Dep't*, No. 12-cv-4681 (HB), 2013 WL

22

6049066, at *2-3 (S.D.N.Y. Nov. 15, 2013) (applying strict scrutiny to the NYPD's no-beard policy because the Department made frequent exemptions for secular reasons but made no exemption for religious reasons). The FDNY enforces its grooming policy to comply with a binding federal regulation. (Defs.' 56.1 ¶¶ 48-50.) This reason satisfies rational basis review. *See Smith*, 494 U.S. at 879, 882; *see also Ungar v. New York City Hous. Auth.*, 363 F. App'x 53, 56 (2d Cir. 2010) (unpublished). Accordingly, Defendants are entitled to summary judgment on all claims premised on an alleged violation of the Free Exercise Clause.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED with prejudice, and Plaintiff's Motion for Summary Judgment is DENIED. The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.


SO ORDERED.


Dated:     Brooklyn, New York
           September 28, 2021

                                     /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge